ORIGINAL

FILED

JUN 14 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1 | Brendan P. Cullen (SBN 194057)
(cullenb@sullcrom.com)

2 | Scott C. Hall (SBN 232492)
(halls@sullcrom.com)

3 | SULLIVAN & CROMWELL LLP
1870 Embarcadero Road

4 | Palo Alto, California 94303-3308
Telephone: (650) 461-5600

5 | Facsimile: (650) 461-5700

6 | Attorneys for Plaintiff
DOLBY INTERNATIONAL AB

E-filing

7

8 | **UNITED STATES DISTRICT COURT**

WHA

9 | **NORTHERN DISTRICT OF CALIFORNIA**

10 | Dolby International AB,      )    Case No. 11 2931

11 |            Plaintiff,    )    **COMPLAINT FOR PATENT**

12 |            v.    )    **INFRINGEMENT**

13 | Research In Motion Limited and
Research In Motion Corporation,

14 |            Defendants.    )    Judge _____

   )    <u>JURY TRIAL DEMANDED</u>

15

16 |          Plaintiff Dolby International AB ("Dolby International" or "Plaintiff,"

17 | and together with its affiliates, "Dolby Labs" or "Dolby") by its undersigned

18 | attorneys, for its complaint against defendants Research In Motion Limited ("RIM

19 | Canada") and Research In Motion Corporation ("RIM USA") (collectively "RIM

20 | or "Defendants") alleges as follows:

21

SULLIVAN & CROMWELL LLP

1

## **SUMMARY OF CLAIMS**

2          1.          This case arises as a result of RIM's intentional and persistent

3   infringement of patented technologies developed by Dolby Labs that enable

4   consumers to enjoy high quality music and other audio on handheld and mobile

5   devices such as those sold by RIM.  Because RIM's products include Dolby Labs'

6   inventions, those products can appeal to consumers who seek devices that

7   incorporate the functionality that the patented technologies provide.  Competitors

8   of RIM have recognized the significant value in Dolby Labs' inventions at issue in

9   this case and have licensed and employed those inventions in hundreds of millions

10  of consumer devices.  RIM, too, has recognized the value of Dolby Labs'

11  inventions, and by employing those inventions in its "BlackBerry" and "PlayBook"

12  products, RIM has made those devices competitive with products similar to those

13  manufactured by paying licensees.

14          2.          Yet unlike virtually all of its competitors, RIM refuses to "play

15  fair," and has rejected numerous opportunities to license the patented inventions at

16  issue in this case.  In fact, RIM stands virtually alone among major manufacturers

17  of smart phones and competes unfairly by marketing products that benefit from

18  using the HE AAC Standards while refusing to pay royalties to use Plaintiff's

19  inventions.  Faced with RIM's recalcitrant infringement, Dolby International has

20  been forced to bring this action seeking damages for past use of its technologies

21  and to enjoin the sale of each and every one of RIM's devices using the patents in

1    suit. In addition, and because RIM's infringement is and continues to be willful,

2    Dolby International seeks enhanced damages and an award of its fees and costs.

3           3.     Since its founding in 1965, Dolby Labs has dedicated itself to

4    developing innovations that substantially improve consumers' enjoyment of audio

5    and audio-visual entertainment. Among the many Dolby inventions are noise

6    reduction employed by the recording and cinema industries, and surround sound

7    for cinema and home entertainment. Dolby Labs' primary focus is not on

8    manufacturing devices, creating content, or delivering content to consumers.

9    Instead, Dolby Labs focuses on translating its cutting-edge research and

10   development into inventions for audio storage, delivery, and interoperability that

11   have been incorporated into products made available on a worldwide basis. Dolby

12   Labs widely licenses its inventions to companies seeking to give consumers a

13   premium audio experience.

14          4.     Plaintiff's inventions have created the opportunity for numerous

15   consumer devices to reproduce audio in ways that would not be possible without

16   Plaintiff's inventions.

17          5.     The patents at issue in this case are essential to the use of many

18   audio features on RIM's devices, including playback of certain significantly

19   compressed digital audio files. Using Plaintiff's inventions, compressed audio

20   signals can be reproduced with "transparent" quality—meaning that a vast majority

21   of listeners will not prefer the original signal to the digital reproduction—using

-3-

1    only half the storage or bandwidth that previous technologies required. Thus,

2    Plaintiff's inventions enabled audio reproduction with approximately twice the

3    efficiency of previously existing technologies.

4             6.     Plaintiff's inventions at issue in this action have been widely

5    recognized as enabling highly efficient transparent audio reproduction in devices

6    such as those sold by RIM, and such technologies have been adopted in a

7    worldwide standard known as High Efficiency Advanced Audio Coding ("HE

8    AAC"). The use and employment of HE AAC necessarily infringes the patents

9    asserted in this action.

10            7.     HE AAC functionality is implemented in numerous devices

11    manufactured and sold by RIM, including all of RIM's latest multi-function smart

12    phone BlackBerry devices and RIM's BlackBerry "PlayBook" tablet computer.

13            8.     RIM advertises that many of its devices support HE AAC.

14            9.     HE AAC describes technology that reduces, or "compresses,"

15    the amount of data required to record digital audio signals, *e.g.*, recordings or

16    broadcasts of music or voice, such as those typically found on compact discs or

17    heard on the radio or those that accompany digital video signals. Once compressed

18    into an HE AAC-compliant "bitstream," any particular audio signal will require

19    only a fraction of the storage space and transmission data rate that the original

20    signal required. For example, using HE AAC compression, a standard 74-minute

21    stereo audio CD would shrink from an original size of 650 megabytes down to a

1    compressed size of only 35 megabytes without any subjective degradation in

2    quality.[1] HE AAC is therefore approximately 19 times more efficient than the

3    storage method used on a traditional audio CD. This compression can result in a

4    significant cost savings to both content providers and end users because it

5    maintains transparent audio quality while economizing both on the amount of

6    storage media that must be purchased to store any given signal and on the amount

7    of data used to transmit and receive the signal.

8          10.    The use of HE AAC enables consumers to enjoy transparent

9    digital audio while meeting the limitations and demands of storage on portable

10    devices, such as smart phones, portable music players, computer tablets and other

11    devices, and the limitations and demands of transmission over limited bandwidth

12    channels, including cellular telephone networks and satellite radio.

13                  **JURISDICTION AND VENUE**

14          11.    This action arises under the patent laws of the United States,

15    Title 35, United States Code, including without limitation 35 U.S.C. §§ 271 and

16    281.

17          12.    This Court has subject matter jurisdiction under 28 U.S.C.

18    §§ 1331 and 1338(a).

19

---

20    [1]    This assumes a compressed data rate of 64 kilobits per second, which is the data rate used by many digital broadcasters and which has been found acceptable by the vast majority of

21    listeners.

-5-

1           13.    RIM USA and, on information and belief, RIM Canada,

2  through their own acts and/or through the acts of their respective affiliated

3  corporations, acting as their agents and/or alter egos, have purposefully imported,

4  sold, caused to be sold, and/or continue to sell and cause to be sold infringing

5  products in the United States and in this judicial district through regular

6  distribution channels knowing such products would be used, offered for sale and/or

7  sold in this judicial district.

8           14.    Plaintiff Dolby International is a wholly owned subsidiary of

9  Dolby Laboratories, Inc., which is located in this judicial district, having its

10  principal offices at 100 Potrero Avenue, San Francisco, California 94103-4813,

11  and conducts substantial business in this district. Certain documents, objects, and

12  witnesses that may be relevant to this action are located within this judicial district.

13          15.    This Court has personal jurisdiction with respect to Defendant

14  RIM USA as a result of RIM USA's past and continuous transaction of business

15  within this State, including having purposefully sold and offered for sale in this

16  judicial district infringing products through regular distribution channels.

17          16.    This Court has personal jurisdiction with respect to Defendant

18  RIM Canada as a result of RIM Canada's contacts with this judicial district, which

19  directly relate to Plaintiff's claims. On information and belief, RIM Canada has:

20  (i) purposefully manufactured and/or caused to be manufactured products that

21  infringe the patents in suit and has either directly imported such infringing

1  products or caused such products to be imported with knowledge that such

2  products would be used, offered for sale and/or sold in this judicial district;

3  (ii) caused RIM USA and/or other of its affiliated companies, acting as its agents

4  and/or alter egos, to import, offer for sale and/or sell infringing products through

5  regular distribution channels knowing such products would be used, offered for

6  sale and/or sold in this judicial district; and/or (iii) engaged in transactions

7  occurring within this judicial district and/or directed at this judicial district, such

8  transactions having the purpose and effect of promoting the sale of infringing

9  products within this judicial district.

10       17.   Venue is proper in this district pursuant to 28 U.S.C.

11  §§ 1391(b), (c), and (d), and § 1400(b).

12                              **THE PARTIES**

13       18.   Plaintiff Dolby International AB (previously known as Coding

14  Technologies Sweden AB, Coding Technologies AB and Dolby Sweden AB) is a

15  Swedish corporation having its principal place of business in Amsterdam, the

16  Netherlands.

17       19.   Dolby International is a wholly owned subsidiary of Dolby

18  Laboratories, Inc., which together with its affiliates has employees in the United

19  States and overseas and annual revenues of approximately $1 billion.

20

21

1    20.    On information and belief, defendant Research In Motion

2    Limited is a Canadian corporation having its principal place of business in

3    Waterloo, Ontario, Canada.

4    21.    On information and belief, defendant Research In Motion

5    Corporation is a Delaware corporation having its principal place of business at

6    122 West John Carpenter Parkway, Suite 430, Irving, Texas 75039, and which is

7    currently registered to transact business with the Secretary of State of California.

8    22.    On information and belief, RIM and its affiliates employ

9    approximately 14,000 employees worldwide, and in fiscal year 2010 RIM's annual

10    revenue was approximately $15 billion.

11    **BACKGROUND**

12    23.    Plaintiff's inventions were the result of lengthy and costly

13    research. As a result of these inventions, handheld devices such as those sold by

14    RIM are capable of playing high-quality audio from sources as varied as streaming

15    internet radio and other services, downloadable music and video files, and other

16    sources.

17    24.    All audio which can be played on handheld devices such as

18    those sold by RIM is encoded and decoded in a digital, rather than analog, format.

19    The amount of digital information that would be required to produce a digital

20    replica of an analog sound wave would overwhelm storage capacity, network

21    capabilities, and battery resources of portable devices such as those employed and

1    sold by RIM. Consequently, digital audio signals must be compressed, or

2    "encoded," to reduce the information that is required to reproduce the audio sound.

3    Historically, a high level of compression—which necessarily encodes less than a

4    complete replica of an analog sound wave—would cause audible distortions that

5    reduced the quality of reproduced sounds.

6         25.    The quality of compressed digital audio has generally increased

7    over the years, but it was not until the patented inventions of Plaintiff that

8    transparent digital audio could be achieved with anything like the efficiency that is

9    available through the use of Plaintiff's inventions. Plaintiff's inventions have been

10   widely credited as causing the improvement in compression efficiency from prior

11   digital audio encoding and decoding capabilities to what those capabilities are

12   today.

13        26.    Compression technologies like HE AAC, which employs

14   Plaintiff's inventions, are called "psychoacoustic" because the bulk of their

15   efficiency gains are derived by exploiting the inherent limitations of the physiology

16   of the human auditory system. Through painstaking research and development,

17   including experiments using test subjects, Plaintiff's researchers have spent years

18   determining which portions of an audio signal are perceptible to a human listener,

19   and which portions can be safely ignored, or even distorted, by an encoding

20   algorithm in order to achieve encoding efficiencies.

21

1    27.    Plaintiff's inventions are responsible for two tools that have

2    substantially increased the compression power and audio quality available through

3    the use of HE AAC. These tools—which are the subject of this action and are

4    widely deployed in RIM devices—are "spectral band replication" ("SBR") and

5    "parametric stereo" ("PS").

6    28.    Plaintiff is universally recognized as an inventor of these two

7    compression technologies in particular, which represented a quantum leap forward

8    in compression efficiency, and which were perfected only after years of research

9    and development.

10    29.    Spectral band replication takes advantage of the human ear's

11    ability to recognize the presence and general contours of very high frequency

12    sounds, but its inability to distinguish fine detail among these higher frequencies.

13    Rather than using data to encode the actual high-frequency sounds, SBR encodes

14    only the general contours that the human ear is capable of hearing and discards the

15    rest. Upon decoding, a synthetic signal is generated in the higher frequencies that

16    is related to the lower frequencies, thereby reconstructing an acceptably accurate

17    reproduced sound while achieving vastly improved compression efficiency.

18

19

20

21

Case3:11-cv-02931-WHA   Document1   Filed06/15/11   Page11 of 27



Figure 1.

30. As shown in Figure 1, broadly speaking, SBR reconstructs higher-frequency sounds by shifting lower frequencies upwards, and then shaping the sound using encoded parameters.

31. Parametric stereo takes advantage of the way in which the human ear perceives the locations of sounds, which primarily depends on, among other things: (1) the relative volume of sound arriving in each ear; and (2) the relative degree of similarity or mismatch between how the same signal sounds in one ear contrasted with the other ear. Rather than encode two separate streams of audio—the way stereo sound has been recorded for decades—PS encodes one combined signal, and then encodes "parameters" so that the decoder can synthesize two signals that resemble the original stereo signal in the necessary ways.

SULLIVAN & CROMWELL LLP

-11-
COMPLAINT FOR PATENT INFRINGEMENT & DEMAND FOR JURY TRIAL



Input ⟶ Bitstream ⟶ Output

Figure 2.

32.     As shown in Figure 2, PS reconstructs two channels of sound by collapsing two channels into one, accompanied by several "parameters" that can be used to reconstruct the two channels.

33.     In order to enable widespread adoption of Plaintiff's patented technologies by diverse device manufacturers, content suppliers, and end users, Plaintiff's patented inventions were incorporated into the worldwide audio compression standards known as High Efficiency Advanced Audio Coding version 1 ("HE AAC v1") and High Efficiency Advanced Audio Coding version 2 ("HE AAC v2") (which are also informally known as "aacPlus" and "Enhanced aacPlus," or "AAC+" and "eAAC+," respectively) and which are formally codified by the International Organization for Standardization in the international standard ISO/IEC 14496-3:2009(E) (collectively, the "HE AAC Standards").

34.     To produce an HE AAC-compliant stream of compressed binary data ("bitstream"), a digital audio signal is processed by a computer algorithm that has been designed to meet the HE AAC Standards.  After storage

1    and/or transmission, the bitstream is reconstructed into a digital audio signal

2    ("decoded") according to a different computer algorithm.  The overall process

3    must be performed according to a predetermined standard in order for any single

4    bitstream to be interoperable among various decoders.  Adherence to the standard

5    allows playback devices to be compatible with audio from various HE AAC-

6    compliant encoders, and vice versa.

7    **WIDESPREAD USE OF THE HE AAC STANDARDS,**
**AND RESPECT FOR PLAINTIFF'S INTELLECTUAL**
8    **PROPERTY RIGHTS BY USERS OTHER THAN RIM**

9           35.    After developing the SBR and PS technologies, Dolby

10    International disclosed the technologies publicly and obtained patent protection

11    from governments throughout the world.

12           36.    The HE AAC Standards incorporate and rely on Plaintiff's

13    patented technology.  It is impossible to create a product that is compatible with

14    the Standards, and to achieve the desired interoperability with other HE AAC-

15    compliant data and devices, without infringing these patents.  These patents are

16    therefore "Essential Patents"—and have been determined to be "essential" by an

17    independent evaluator as set forth in paragraph 42.

18           37.    As part of the standard-setting process, Dolby International

19    committed itself to provide bilateral licenses to its Essential Patents.

20

21

1    38.   As a convenience and an alternative to a bilateral license with

2    Dolby Labs, many of Plaintiff's patents are available for license through Via

3    Licensing Corporation ("Via").

4    39.   Via was established to provide the marketplace with non-

5    discriminatory access to pools of essential patents covering widely adopted

6    standards and technologies.  Such pool licenses are widely recognized, including

7    by the United States Department of Justice, Antitrust Division, as providing many

8    pro-competitive benefits.  Among its license offerings, Via provides access to the

9    "HE AAC Essential Patent Pool" of essential patents owned by many entities,

10   including Plaintiff.

11   40.   Via is a non-exclusive licensee (with a right to sublicense) of all

12   patents in suit, as well as numerous other licensors' patents that are essential to the

13   practice of the HE AAC technology.  Via has the authority to offer a non-exclusive

14   sublicense to those patents throughout the world on standard, non-discriminatory

15   and reasonable terms as agent for Plaintiff and other patentees.

16   41.   The license offered by Via combines rights under Plaintiff's

17   Essential Patents with other Essential Patents owned by other patentees.  The Via

18   licenses provide to the marketplace an alternative to bilateral licenses with each of

19   the licensors, including Plaintiff.

20   42.   As a criterion for inclusion in the licenses offered by Via,

21   patents must be deemed "essential" by an independent evaluator.  The patents in

-14-

1  suit have been determined by Via's independent evaluator to be necessarily

2  infringed by the use of the HE AAC Standards, and thus are Essential Patents.

3        43.    On information and belief, several hundred manufacturers and

4  software developers have recognized the value and technical superiority of the HE

5  AAC Standards and have taken a license to the patents offered by Via (including

6  the patents in suit), permitting such licensees to incorporate the HE AAC Standards

7  into their products.

8        44.    On information and belief, content distributors have also

9  recognized the value and technical superiority of the HE AAC Standards, relying

10  on HE AAC-licensed products to transmit and receive their HE AAC-encoded

11  content.

12        45.    The HE AAC Standards are also incorporated into the video

13  content delivery standard commonly referred to as MPEG-4, which is widely used

14  to transmit video files over the internet.

15        46.    The list of manufacturers who pay royalties to license patents

16  covering the HE AAC Standards includes RIM's primary competitors in the smart

17  phone market, including Apple, HTC, LG, Motorola, Nokia, Samsung, Sony

18  Ericsson, and others.

19        47.    Indeed, RIM stands virtually alone as a major manufacturer of

20  smart phones which is competing unfairly by electing to market products that

21

1 benefit from using the HE AAC Standards while refusing to pay royalties to

2 Plaintiff for using Plaintiff's inventions incorporated into those standards.

3      48.    RIM's infringing devices provide HE AAC functionality

4 directly to consumers. For example, on information and belief, consumers use

5 RIM devices and software to play music and video files and listen to other audio

6 signals that have been encoded using the HE AAC Standards.

7      49.    In addition, RIM's infringing devices provide HE AAC

8 functionality indirectly to consumers. For example, on information and belief,

9 RIM publishes specifications, manuals, and tutorials that instruct and enable third-

10 party software developers to access RIM's devices' built-in HE AAC functionality

11 through a conduit, or application programming interface ("API"), provided by the

12 internal software that powers its devices. On information and belief, consumers

13 use such third-party software to access the HE AAC functionality that is built into

14 RIM devices to decode audio signals that have been encoded using the HE AAC

15 Standards.

16      50.    For example, on information and belief, many internet radio

17 services—as well as radio-like internet services—and numerous other audio and

18 video internet services rely on HE AAC technology to reduce their storage and

19 transmission costs and improve audio quality. Millions of listeners on wireless

20 mobile devices also benefit, because most do not have an "unlimited" wireless data

21 subscription; instead, they pay according to the amount of wireless data they send

1  and receive. The HE AAC Standards permit those users to experience audio at a

2  substantially reduced cost. On information and belief, users of RIM's devices

3  listen to these services' HE AAC-encoded audio streams through third-party

4  software that relies on HE AAC functionality provided through the BlackBerry

5  API.

6          **NOTICE TO RIM, AND RIM'S REFUSAL TO TAKE A LICENSE**

7          51.   RIM has been notified repeatedly of its infringing conduct and

8  activities by numerous communications, only some of which are set forth in the

9  following paragraphs:

10         52.   On information and belief, Via first contacted RIM in

11  November 2006 to discuss the use of AAC in the BlackBerry Pearl smart phone.

12         53.   On information and belief, in March 2007, Via provided a

13  sample HE AAC Essential Patent Pool licensing agreement, which included a list

14  of Essential Patents.

15         54.   On or about April 26, 2007, Via's Director of Licensing

16  Programs sent an e-mail to Mike Crowley and Randy Mishler, RIM's Intellectual

17  Property Counsel. This e-mail identified companies that owned patents that were

18  essential to HE AAC, and provided information to permit RIM to contact those

19  companies directly as an alternative to the license offered by Via. This e-mail

20  identified Coding Technologies AB, now Dolby International, as the owner of

21  several essential patents, and noted that "[o]f course, these are just some

1   representative patents. A more comprehensive list is presented in Appendix A of

2   the [proposed licensing agreement]."

3         55.    Mr. Mishler of RIM reached out to both DLLC and Coding

4   Technologies AB and received detailed information in response to his inquiries

5   regarding Plaintiff's technologies and RIM's use of the patents in suit. For

6   example, in May 2007, to demonstrate the strength of its claims, Dolby

7   International provided exemplary charts describing how certain of its patents were

8   necessarily infringed by RIM's use of the HE AAC Standards.

9         56.    On information and belief, between December of 2007 and June

10  2008, Via and RIM engaged in extensive discussions and negotiated several issues

11  raised by RIM to that company's satisfaction. Between March and June of 2009,

12  Via continued to contact RIM, seeking to have RIM honor its intellectual property

13  obligations with respect to the patents in suit and other HE AAC Essential Patents.

14  Thereafter, discussions with RIM continued and a license for execution that

15  included the patents-in-suit was sent to RIM in 2010 at RIM's request. In early

16  2011, communications with RIM continued in an effort to have RIM honor its

17  intellectual property obligations. To date, RIM has steadfastly refused to execute

18  any license concerning the patents in suit, ignoring Via's attempts to restart a

19  dialogue with RIM.

20

21

1    57.    On information and belief, at no time has RIM ever suggested

2    that its products do not infringe the patents in suit, nor has it ever asserted that the

3    patents in suit were invalid or unenforceable.

4    58.    Notwithstanding the fact that RIM was and continues to be

5    aware that its products infringed and are infringing patents owned by Plaintiff,

6    RIM has been and remains unlicensed under the patents in suit.

7    **RIM'S INFRINGEMENT**

8    59.    Defendants manufacture, import, use, offer to sell, and/or sell

9    within the United States and in this district products which incorporate HE AAC

10   technology.

11   60.    RIM manufactures, offers to sell, sells, uses, and/or imports a

12   number of products that employ HE AAC functionality. Without the benefit of

13   discovery from RIM about the gamut of its products with HE AAC functionality,

14   Plaintiff is not able to ascertain at the pleading stage all the RIM products with HE

15   AAC functionality. However, materials available on RIM's website identify

16   infringing products that include, but may not be limited to, the following products

17   with HE AAC functionality: the BlackBerry Storm 9530, BlackBerry Storm 9550,

18   BlackBerry Tour 9630, BlackBerry Bold 9000, BlackBerry Bold 9650, BlackBerry

19   Bold 9700, BlackBerry Bold 9780, BlackBerry Pearl 8100, BlackBerry Pearl 8130,

20   BlackBerry Pearl 8110, BlackBerry Pearl 8120, BlackBerry Pearl 8220,

21   BlackBerry Pearl 8230, BlackBerry Pearl 9100, BlackBerry Pearl 9105,

1   BlackBerry Curve 8320, BlackBerry Curve 8310, BlackBerry Curve 8520,

2   BlackBerry Curve 8330, BlackBerry Curve 8350i, BlackBerry Curve 8900,

3   BlackBerry Curve 8530, BlackBerry Curve 8910, BlackBerry Curve 8980,

4   BlackBerry Curve 9300, BlackBerry Curve 9330, BlackBerry Style 9670, and

5   BlackBerry Torch 9800 (*see* Supported Media Types on BlackBerry Smartphones

6   Reference Guide (2011) (annexed hereto as Exhibit 1)); the BlackBerry PlayBook

7   tablet computer (*see* Supported Media Types on BlackBerry Tablets Reference

8   Guide (2011) (annexed hereto as Exhibit 2)); and software that

9   decodes/decompresses or encodes/compresses audio signals according to the HE

10  AAC Standards, including without limitation versions 4.2 and, generally, higher of

11  the BlackBerry Operating System ("BlackBerry OS") (*see* Research In Motion,

12  BlackBerry Java Development Environment API Reference: Multimedia Overview

13  (last visited June 13, 2011), *available at* http://www.blackberry.com/developers/

14  docs/6.0.0api/multimedia-summary.html (annexed hereto as Exhibit 3))

15  (collectively, "RIM's HE AAC Products").

16          61.     RIM is infringing the patents in suit by, among other things,

17  making, importing, using, offering to sell and/or selling, in the United States and in

18  this judicial district, RIM's HE AAC Products, which employ the patented

19  HE AAC technologies.

20

21

-20-

62. RIM's HE AAC Products are purposely shipped by Defendants through an established distribution channel and are knowingly sold, among other places, within this judicial district.

63. The manufacture, importation, use, offer to sell, and/or sale of RIM's HE AAC Products—which do any one or more of the following: decode, encode, or enable or accelerate the decoding or encoding of digital audio signals using patented HE AAC methods and devices—directly and/or indirectly infringe the patents in suit.

64. Defendants have published and continue to regularly publish product descriptions indicating that their products support and employ HE AAC technology, and on information and belief, Defendants have distributed or published print and/or video advertisements that promote RIM's HE AAC Products' media-playing capabilities. Those capabilities include the ability to play HE AAC content. (*See, e.g.*, Ex. 1.)

65. In addition to their direct infringement, Defendants indirectly infringe the patents in suit by importing, offering for sale and/or selling RIM's HE AAC Products in this judicial district and elsewhere, which products are purportedly made and sold to practice a patented method, and which products constitute material parts of the inventions claimed in the patents in suit, knowing that such HE AAC Products are especially made and/or especially adapted for use

1  in an infringement of the patents in suit, and are not staple articles or commodities

2  of commerce suitable for substantial noninfringing use.

3        66.    Defendants also indirectly infringe the patents in suit by

4  importing, using, offering to sell, selling, encouraging, and instructing others to use

5  RIM's HE AAC Products, knowing that the use of these products to, among other

6  things, decode, encode, or enable or accelerate the decoding or encoding of HE

7  AAC video signals causes others to infringe the patents in suit.

8        67.    RIM's infringing actions were and are taken without Plaintiff's

9  consent or authority.

10       68.    RIM has been put on notice of its infringement in various

11 communications, including letters informing RIM that it remained unlicensed

12 under the HE AAC Essential Patents, including the patents in suit. On information

13 and belief, RIM had knowledge of the patents in suit prior to engaging in acts of

14 infringement and knew or should have known that it was infringing, and/or acted

15 in disregard of such risk. Thus, and for other reasons stated herein, infringement of

16 the patents in suit by RIM is willful.

17       69.    This is an exceptional case and, accordingly, Plaintiff is entitled

18 to enhanced damages and its attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

19       70.    Plaintiff has suffered irreparable injury for which there is no

20 adequate remedy at law as a result of RIM's infringement of the patents in suit.

21 Pursuant to 35 U.S.C. § 283, Plaintiff is entitled to an injunction against further

1   infringement by an order preventing Defendants from selling any of RIM's HE

2   AAC Products in the United States.

3                                    **COUNT ONE**

4                71.    The allegations contained in paragraphs 1 through 70 above are

5   repeated and realleged as if fully set forth herein.

6                72.    Dolby International is the legal owner of United States Letters

7   Patent No. 6,978,236 ("the '236 Patent").  The patent issued on December 20,

8   2005.  (Ex. 4.)

9                73.    Defendants have infringed and are infringing directly and/or

10   indirectly the '236 Patent by making, using, offering to sell, or selling RIM's HE

11   AAC Products within the United States or importing into the United States RIM's

12   HE AAC Products, in violation of 35 U.S.C. §§ 271 (a)-(c).

13               74.    Unless enjoined, Defendants will continue to infringe the '236

14   Patent.

15                                   **COUNT TWO**

16               75.    The allegations contained in paragraphs 1 through 70 above are

17   repeated and realleged as if fully set forth herein.

18               76.    Dolby International is the legal owner of United States Letters

19   Patent No. 7,003,451 ("the '451 Patent").  The patent issued on February 21, 2006.

20   (Ex. 5.)

21

1    77.    Defendants have infringed and are infringing directly and/or

2    indirectly the '451 Patent by making, using, offering to sell, or selling RIM's HE

3    AAC Products within the United States or importing into the United States RIM's

4    HE AAC Products, in violation of 35 U.S.C. §§ 271 (a)-(c).

5    78.    Unless enjoined, Defendants will continue to infringe the '451

6    Patent.

7                              **COUNT THREE**

8    79.    The allegations contained in paragraphs 1 through 70 above are

9    repeated and realleged as if fully set forth herein.

10    80.    Dolby International is the legal owner of United States Letters

11    Patent No. 7,382,886 ("the '886 Patent"). The patent issued on June 3, 2008.

12    (Ex. 6.)

13    81.    Defendants have infringed and are infringing directly and/or

14    indirectly the '886 Patent by making, using, offering to sell, or selling RIM's HE

15    AAC Products within the United States or importing into the United States RIM's

16    HE AAC Products, in violation of 35 U.S.C. §§ 271 (a)-(c).

17    82.    Unless enjoined, Defendants will continue to infringe the '886

18    Patent.

19                              **COUNT FOUR**

20    83.    The allegations contained in paragraphs 1 through 70 above are

21    repeated and realleged as if fully set forth herein.

1        84.    Dolby International is the legal owner of United States Letters

2  Patent No. 7,469,206 ("the '206 Patent"). The patent issued on December 23,

3  2008. (Ex. 7.)

4        85.    Defendants have infringed and are infringing directly and/or

5  indirectly the '206 Patent by making, using, offering to sell, or selling RIM's HE

6  AAC Products within the United States or importing into the United States RIM's

7  HE AAC Products, in violation of 35 U.S.C. §§ 271 (a)-(c).

8        86.    Unless enjoined, Defendants will continue to infringe the '206

9  Patent.

10                            **COUNT FIVE**

11        87.    The allegations contained in paragraphs 1 through 70 above are

12  repeated and realleged as if fully set forth herein.

13        88.    Dolby International is the legal owner of United States Letters

14  Patent No. 7,590,543 ("the '543 Patent"). The patent issued on September 15,

15  2009. (Ex. 8.)

16        89.    Defendants have infringed and are infringing directly and/or

17  indirectly the '543 Patent by making, using, offering to sell, or selling RIM's HE

18  AAC Products within the United States or importing into the United States RIM's

19  HE AAC Products, in violation of 35 U.S.C. §§ 271 (a)-(c).

20        90.    Unless enjoined, Defendants will continue to infringe the '543

21  Patent.

1             WHEREFORE, Plaintiff demands judgment as follows:

2          1.     Adjudging, finding, and declaring that Defendants are

3 infringing the patents in suit.

4          2.     Adjudging, finding and declaring that Defendants' infringement

5 has been willful.

6          3.     Permanently enjoining the sale of each and every device that

7 infringes one or more of the patents in suit and permanently enjoining Defendants,

8 their officers, agents, servants, employees, and attorneys, and those persons in

9 active concert or participation with them, from infringing the patents in suit.

10          4.     Awarding Plaintiff an accounting and damages against

11 Defendants in a sum to be determined at trial, together with interest and costs as

12 fixed by the Court; all of these damages to be enhanced in an amount up to treble

13 the amount of compensatory damages.

14          5.     Awarding Plaintiff its reasonable attorneys' fees, costs, and

15 disbursements in this action.

16          6.     Granting Plaintiff such other and further relief as is just and

17 proper.

18

19

20

21

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues that may be so tried.

Dated:    June 15, 2011

*Brendan P. Cullen /sch/*

Brendan P. Cullen (SBN 194057)
Scott C. Hall (SBN 232492)
SULLIVAN & CROMWELL LLP
1870 Embarcadero Road
Palo Alto, California  94303-3308
Telephone:  (650) 461-5600
Facsimile:   (650) 461-5700

*Of Counsel*:
Garrard R. Beeney
James T. Williams
David R. Dehoney
W. Rudolph Kleysteuber IV
Dana E. Vallera
125 Broad Street
New York, New York  10004-2498
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

Heath Hoglund
Dolby Laboratories, Inc.
100 Potrero Avenue
San Francisco, CA  94103
Telephone:  (415) 558-0200

*Attorneys for Plaintiff*
*Dolby International AB.*

COMPLAINT FOR PATENT INFRINGEMENT & DEMAND FOR JURY TRIAL

SULLIVAN & CROMWELL LLP